UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL G. BOUCHARD,

                          Plaintiff,

        -against-                                    1:17-CV-1156 (LEK/CFH)

TAMARA B. THOMSON, Assistant
United States Attorney for the Northern
District of New York, *et al.*,

                          Defendants.

_____

## DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff Michael Bouchard, proceeding *pro se*, brings this action against Assistant United

States Attorneys Tamara Thomson and Michael Olmsted, former United States Attorney Richard

Hartunian, and the United States Department of Justice ("DOJ"), and alleges that Defendants

retaliated against him in violation of the First Amendment of the United States Constitution. Dkt.

No. 5 ("Amended Complaint"). Defendants moved to dismiss the Amended Complaint. Dkt.

Nos. 8 ("Motion"), 8-2 ("Memorandum"). Plaintiff responded to the Motion, Dkt. No. 13

("Response"), and Defendants filed a reply, Dkt. No. 14 ("Reply"). For the following reasons,

Defendants' Motion is granted.

## II.     BACKGROUND

### A.  Factual History

        The facts in this section are drawn from the Amended Complaint, and are taken as true

for the purpose of deciding Defendants' Motion. Cooper v. Parsky, 140 F.3d 433, 440 (2d

Cir. 1998). The Court also takes judicial notice of the records from Plaintiff's prior criminal

proceeding. See Frigerio v. United States, No. 10-CV-9086, 2011 WL 3163330, at *6 (S.D.N.Y. July 22, 2011) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings." (citing Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991))).

In July 2012, Plaintiff was indicted in the United States District Court for the Northern District of New York and charged with one count of conspiracy, twenty-two counts of bank fraud, and one count of false statement in connection with alleged mortgage fraud. Indictment, United States v. Bouchard, No. 12-CR-381 (N.D.N.Y. July 25, 2012), ECF No. 1. Around this time, Plaintiff sent a letter to then-Attorney General Eric Holder asking that Holder appoint a special prosecutor to investigate alleged wrongdoing by various judges and attorneys in the Northern District of New York, including Olmsted and Hartunian. Am. Compl. ¶ 10. The letter, Dkt. No. 1-1 ("Letter"), proclaims Plaintiff's innocence and accuses these judges and attorneys of entering into a conspiracy to prosecute him. Plaintiff posted the Letter on his website, uploaded a summary of it to YouTube, and "arranged for the dissemination of two press releases regarding the letter." Am. Compl. ¶ 10.

Plaintiff alleges that, during his criminal trial in November 2012, his attorney told him that Olmsted and Thomson were upset about the Letter and "wanted [it] to come down from [Plaintiff's] web-site." Id. ¶ 11. On November 30, 2012, the jury found Plaintiff guilty of conspiracy, two counts of bank fraud, and false statement, and acquitted him of the remaining counts. Jury Verdict, Bouchard, No. 12-CR-381, ECF No. 38. On April 24, 2013, Hartunian, Thomson, and Olmsted filed a sentencing memorandum seeking a sentence "enhancement for

[o]bstruction of [j]ustice based upon" Plaintiff "having inappropriate contact with witnesses" and for writing the Letter. Sentencing Mem., <u>Bouchard</u>, No. 12-CR-381, ECF No. 60. At Plaintiff's sentencing hearing on October 22, 2014, Thomson engaged in a "vindictive tirade," stating that Plaintiff "has never actually accepted responsibility" for mortgage fraud, and referencing "the YouTube videos" and the Letter as support for this position. Am. Compl. ¶ 11.

Plaintiff maintains that Defendants' actions "chilled the exercise of [his] First Amendment right." <u>Id.</u> ¶ 12. Specifically, Plaintiff states that, after Defendants told his attorney that they were upset about his Letter, he "acquiesced to [their] demands and" removed the Letter from his website, and "refrained from issuing any further press releases," "posting any further information on Youtube," or "sending any more letters to the Attorney General." <u>Id.</u> ¶ 13. Moreover, during his sentencing hearing in October 2014, Plaintiff decided against "freely speak[ing] out and discuss[ing] a detailed chronology of the criminal acts of the defendants and other bad actors." <u>Id.</u>

### B. Procedural History

Plaintiff commenced this action on October 18, 2017. Dkt. No. 1 ("Complaint"). He filed the Amended Complaint on December 5, 2017, Am. Compl., naming Thomson, Olmsted, Hartunian, and the DOJ as defendants, and alleging, pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), that Defendants' response to the Letter, Plaintiff's YouTube videos, and his press releases constituted retaliation in violation of the First Amendment, <u>id.</u> ¶¶ 12–13. Defendants moved to dismiss the Amended Complaint, Plaintiff opposed the Motion, and Defendants filed a Reply. Plaintiff seeks $10,000,000 in

damages from each defendant, and an additional $10,000,000 in punitive damages. Am. Compl. at 11–12.

## III.    LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the nonmoving party. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the action is subject to dismissal. Id. at 678–79. Finally, because Plaintiff brings this action *pro se*, the Amended Complaint "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

4

## IV.     DISCUSSION

The Supreme Court, in <u>Bivens</u>, recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." <u>McGowan v. United States</u>, 825 F.3d 118, 123 (2d Cir. 2016) (quoting <u>Corr. Servs. Corp. v. Malesko</u>, 534 U.S. 61, 66 (2001)). Plaintiff states that Defendants committed the following retaliatory acts: (1) during Plaintiff's trial, Olmsted and Thomson told Plaintiff's attorney that Plaintiff should remove the Letter from his website; (2) in the Sentencing Memorandum, Olmsted, Hartunian, and Thomson cited Plaintiff's Letter as support for their request for a sentence enhancement for obstruction of justice; and (3) during Plaintiff's October 2014 sentencing hearing, Thomson cited Plaintiff's YouTube videos and his Letter to support Defendants' position that Plaintiff refused to take responsibility for his criminal conduct. Am. Compl. ¶ 11.

Defendants argue that the Amended Complaint should be dismissed because: (1) Plaintiff's claims are not cognizable under <u>Bivens</u>; (2) the action is barred by the Supreme Court's decision in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994); (3) sovereign immunity bars Plaintiff's official capacity claims and claims against the DOJ; (4) prosecutorial immunity bars the individual capacity claims against Thomson and Olmsted; and (5) qualified immunity bars the individual capacity claim against Hartunian. Mem. at 4–16. The Court need not decide whether Plaintiff's claims are cognizable under <u>Bivens</u> or barred by <u>Heck</u> because, as discussed below, it finds that sovereign and prosecutorial immunity bar this action.

### A.  Official Capacity Claims and Claims Against DOJ

Plaintiff brings First Amendment retaliation claims against Olmsted, Thomson, and Hartunian in their official capacities, and against the DOJ. Am. Compl. ¶¶ 4–7. "[B]ecause an

action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived." Coon v. Trustco Bank Corp., No. 07-CV-1115, 2007 WL 4118938, at *2 (N.D.N.Y. Nov. 16, 2007) (citing Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484–86 (1994)). "Moreover, a plaintiff bears the burden to demonstrate that sovereign immunity has been waived." McIntosh v. United States, No. 15-CV-2442, 2018 WL 1275119, at *5 (S.D.N.Y. Mar. 7, 2018) (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). It is also well settled that "[t]he United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts." Alston v. Sebelius, No. 13-CV-4537, 2014 WL 4374644, at *8 (E.D.N.Y. Sept. 2, 2014) (quoting Castro v. United States, 34 F.3d 106, 110 (2d Cir. 1994)). Plaintiff does not address the issue of waiver in his Response. Because Plaintiff has not alleged that the United States has waived its immunity with respect to his retaliation claims, the Court grants Defendants' Motion with respect to Plaintiff's official capacity claims and his claim against DOJ.

### B. Individual Capacity Claims against Olmsted and Thomson

Plaintiff's individual capacity claims against Olmsted and Thomson are barred by prosecutorial immunity. "[P]rosecutors performing traditional prosecutorial activities are given absolute immunity in § 1983 suits and Bivens suits." Juste v. Vilardo, No. 17-CV-6842, 2018 WL 401522, at *3 (W.D.N.Y. Jan. 12, 2018) (citing Imbler v. Pachtman, 424 U.S. 409, 427–28 (1976)). "The absolute immunity accorded to government prosecutors encompasses not only their conduct of trials but all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation." Id. (citing Barrett v. United

6

States, 798 F.2d 565, 571–72 (2d Cir. 1986)). Absolute immunity applies to such activities

regardless of the prosecutor's motive. Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987). See

Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor

from . . . liability for virtually all acts, regardless of motivation, associated with his function as an

advocate.").

Plaintiff alleges that Olmsted and Thomson performed three retaliatory acts: (1) they told

Plaintiff's attorney that they wanted Plaintiff to remove from his website a copy of the Letter that

he wrote to then-Attorney General Holder; (2) they cited his Letter as one of the reasons for

seeking a sentence enhancement in the United States' Sentencing Memorandum; and

(3) Thomson referenced Plaintiff's prior speech activities to support the Government's position

that Plaintiff refused to take responsibility for his criminal conduct. Am. Compl. ¶ 11.

Olmsted and Thomson's alleged conversation with Plaintiff's defense lawyer about the

Letter occurred during Plaintiff's criminal trial. Id. Because Olmsted and Thomson spoke with

Plaintiff's trial counsel during Plaintiff's criminal trial about a matter directly involving the trial,

the conversation was "intimately associated with the judicial process." Buckley v. Fitzsimmons,

509 U.S. 259, 269 (1993). Therefore, absolute immunity shields Olmsted and Thomson from

whatever liability could otherwise have attached to this conversation.

Plaintiff's allegation that the prosecutors retaliated against him by discussing his prior

statements in the Sentencing Memorandum and during his sentencing hearing fares no better.

Absolute immunity shields a prosecutor from liability for activities that they perform during

sentencing proceedings. Pinaud v. County of Suffolk, 52 F.3d 1139, 1149 (2d Cir. 1995); see Hill

v. Donoghue, 815 F. Supp. 2d 583, 586 (E.D.N.Y. 2011) ("Plaintiff's claim that AUSA

7

Donoghue wrongfully used the tapes to influence Plaintiff's sentenced is barred by absolute immunity."). Accordingly, absolute immunity protects Olmsted and Thomson from liability for discussing Plaintiff's Letter, his YouTube posts, and his press releases in the Sentencing Memorandum and during his sentencing hearing.

### C. Individual Capacity Claims against Hartunian

Plaintiff makes sparse allegations against Hartunian in the Amended Complaint. Construed liberally, he alleges that Hartunian helped draft the Sentencing Memorandum, and therefore participated directly in the retaliation against Plaintiff. Am. Compl. ¶ 11. Hartunian, a prosecutor, is absolutely immune from liability for whatever contribution he made to the Sentencing Memorandum for the same reasons discussed above with respect to Olmsted and Thomson.

Plaintiff also states that Hartunian knew of prior misconduct by Olmsted and Thomson that should have made him aware of "the risk that another constitutional violation would be orchestrated." Resp. at 18–19. Liberally construed, Plaintiff alleges that Hartunian was grossly negligent in his supervision of Olmsted and Thomson, and was therefore personally involved in the alleged retaliation against Plaintiff. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (stating that a supervisory defendant is personally involved in a constitutional deprivation if he or she was "grossly negligent in supervising subordinates who committed the wrongful acts").

While Defendants did not argue that Hartunian is absolutely immune from this claim, the Court finds that he is. "Ordinarily, *sua sponte* dismissal of a *pro se* plaintiff's [claim] . . . is disfavored." Rolle v. Berkowitz, No. 03-CV-7120, 2004 WL 287678, at *1 (S.D.N.Y. Feb. 11, 2004) (citing Lewis v. New York, 547 F.2d 4, 5 (2d Cir. 1976)). "However, courts within the

8

Second Circuit have not hesitated to dismiss *sua sponte* claims brought by fee-paying *pro se* plaintiffs when it is clear such claims 'presen[t] no arguably meritorious issue for [the courts'] consideration." Id. (citing Pillay v. Immigration and Naturalization Serv., 45 F.3d 14, 17 (2d Cir. 1995)). Because a court is empowered to dismiss *sua sponte* frivolous claims, "[i]t necessarily follows that a court may dismiss a cause of action on grounds not raised by the parties." B.V. Optische Industrie De Oude Delft v. Hologic, Inc., 909 F. Supp. 162, 170 n.5 (S.D.N.Y. 1995).

Acknowledging that dismissing a claim on grounds not raised is disfavored, the Court nevertheless finds that Plaintiff's claim against Hartunian is frivolous and must be dismissed. Plaintiff argues that Hartunian should have either prevented Olmsted and Thomson from discussing Plaintiff's speech activities during his trial or disciplined them for doing so. However, the Court already found that Olmsted and Thomson's conduct was intimately associated with Plaintiff's trial. Hartunian, a prosecutor, is similarly immune from a claim that he did not compel his subordinates to adopt a different strategy during the trial or sentencing. See Van de Kamp v. Goldstein, 555 U.S. 335, 346 (2009) (holding that "a suit charging that a supervisor trained and supervised [subordinate prosecutors] inadequately" was barred by prosecutorial immunity); D'Alessandro v. City of New York, No. 13-CV-930, 2016 WL 6962516, at *5 (E.D.N.Y. Nov. 28, 2016) (holding that the plaintiff's "failure to train and deliberate indifference claims against" the district attorney were "prosecutorial in nature" and barred by prosecutorial immunity); L.H. v. County of Livingston, No. 12-CV-6541, 2013 WL 5656209, at *4 (W.D.N.Y. Oct. 16, 2013) (holding that district attorney was absolutely immune from suit based on his alleged failure to supervise a subordinate attorney). Because Hartunian is absolutely immune from the claim that

he was grossly negligent in his supervision of Olmsted and Thomson, the Court dismisses this claim.

### D.  Leave to Amend

The Second Circuit has stated that a "court should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)). However, the claims Plaintiff asserts against Defendants are irreparable because they are barred either by sovereign or prosecutorial immunity. See Karris v. Varulo, No. 14-CV-1077, 2014 WL 1414483, at *4 (E.D.N.Y. Apr. 10, 2014) ("Any amendment to plaintiff's amended complaint would be futile because . . . all defendants are entitled to absolute immunity."); Dilacio v. N.Y.C. Dist. Council of the United Bhd. of Carpenters & Joiners of Am., 593 F. Supp. 2d 571, 578 (S.D.N.Y. 2008) (finding that leave to amend would be futile where the claims were barred by absolute immunity); Rolle, 2004 WL 287678, at *3 (dismissing *pro se* complaint *sua sponte* and finding that leave to amend would be futile because the defendants were immune from suit). Therefore, the Court dismisses the Amended Complaint without leave to amend.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 8) is **GRANTED**; and it is further

**ORDERED**, that the Amended Complaint (Dkt. No. 5) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court is directed to enter judgment for Defendants and to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      April 04, 2018
               Albany, New York

Lawrence E. Kahn
U.S. District Judge

11